Gregg S. Sodini, Esq.
SODINI & SPINA, LLC
120 Wood Avenue South-Suite 407
Iselin, New Jersey 08830
Attorneys for Plaintiff Swartz Associates, Inc.

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| SWARTZ ASSOCIATES, INC., Plaintiff, | Civil Action No. 01-316 C |
| v. | |
| THE UNITED STATES OF AMERICA, Defendant. | **AMENDED COMPLAINT** |

**INTRODUCTION**

1. Plaintiff Swartz Associates, Inc. ("Swartz") has rendered auction services and vehicle maintenance services for three offices of the U.S. Marshals Service ("USMS"): the District of New Jersey, the Southern District of New York, and the Eastern District of New York since 1992. In 1998, it was invited to bid on a five-year contract to provide auction services and vehicle maintenance services. It was the only company to submit a valid bid for the contract and was repeatedly told that it had been awarded the contract, subject only to confirming documentation. However, in September 1999, Swartz received a letter stating that the contract had been awarded to another company run by affiliates of Deputy U.S. Marshal Dominick Russo ("Russo") including, but not limited to, his then girlfriend, Patricia Eisendorfer and her brother, William Eisendorfer. Swartz' objections to this conduct resulted in retaliatory activities by Russo and when Swartz bid on another contract in December 2000, that contract was wrongfully denied to Swartz. This action is brought to redress this conduct.

## JURISDICTION

2. This court has subject matter jurisdiction of the within action pursuant to 28 U.S.C. § 1491(a)(1) in that it involves a claim against the United States sounding in contract. This court further has subject matter jurisdiction of the within action pursuant to 28 U.S.C. § 1491(b)(1) in that it involves a challenge to a solicitation for bids and/or an award of a contract by the USMS.

## PARTIES

3. Plaintiff Swartz is a New Jersey corporation with a business address of P.O. Box 521, Wharton, New Jersey, 07885. Swartz has been in business since 1987 as a provider of auctioneer, appraisal, charity fund raising, and liquidation services to private and governmental entities.

4. Defendant United States of America is a sovereign governmental entity with the capacity to sue and be sued in accordance with the jurisdictional statutes referenced above.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

5. Between 1992 and 1996, Swartz provided auction services to USMS for the District of New Jersey by auctioning various goods including, but not limited to, hair bows and stereo equipment, on behalf of the USMS.

6. Swartz's services to the USMS for the District of New Jersey expanded over time to include additional auctions plus the performance of maintenance on vehicles. In addition, the USMS in the Eastern District of New York, the Southern District of New York, and Eastern

District of Pennsylvania, recognizing Swartz's superior service, retained Swartz to conduct auction services and maintenance services.

7. In February 1996, Swartz conducted its first auction for the USMS in which both automobiles and/or jewelry were sold.

8. From 1996 to 1998, Swartz conducted its maintenance and auction services for the USMS offices of the District of New Jersey, the Eastern District of New York and the Southern District of New York under various "Blanket Purchase Agreements."

9. The practice of the USMS, at all times relevant hereto, was that the main contact between Swartz and the USMS was Deputy U.S. Marshal Dominick R. Russo from the New Jersey office. In this regard, Russo represented himself to Swartz as the designated contracting officer for the Government.

10. In March 1998, Russo invited Swartz to bid for a five-year contract for auction services and maintenance services, number NS-98-R-0019.

11. On or about June 4, 1998, Swartz timely sent a package to the USMS headquarters, submitting its bid on the five-year contract. Shortly thereafter, the USMS headquarters requested additional information which Swartz timely provided.

12. On repeated occasions after June 4, 1998, Russo repeatedly told Swartz that it was the sole bidder on the five-year auction and maintenance contract and that, as a result it had been awarded the five-year exclusive contract and that the final paperwork would be forthcoming.

13. On or about November 2, 1998, Swartz received a "scope of work" statement to submit prices while waiting to begin work under the terms of the new contract.

14. In November 1998, Russo told Swartz to begin work on December 1, 1998 under the terms of the five-year contract and that the final paperwork would be forthcoming.

15. On or about November 4, 1998, in response to a telephonic inquiry from Russo, Swartz submitted to Russo the pricing for vehicle maintenance, inspection, auction preparation, and auction services.

16. On December 2, 1998, Swartz received from Russo an "Order for Supplies or Services," Order number 99-50-NASAF-010; Requisition Reference Number 99-050-183. This Order for Supplies or Services asked Swartz to provide monthly maintenance, check-in processing, and Auction preparation services.

17. In late December 1998, Russo asked Swartz to change its fee structure and instead of charging separately for advertising and security expenses, to increase its auction commission percentage to compensate it for these expenses. Swartz complied with this request.

18. On or about February 3, 1999, Russo again confirmed that Swartz had been awarded the five-year contract but said that the final contract from New Jersey has to be written as a "base year plus four option years."

19. On or about February 19, 1999, Russo sent out a solicitation for interested bidders to provide "maintenance and auction services for seized and forfeited vehicles." The deadline for responding to this solicitation was March 5, 1999.

20. On or about March 3, 1999 Swartz submitted a bid in response to this solicitation to continue providing these services "for another five years and well into the future." No entity other than Swartz timely submitted a bid in response to this solicitation.

21. From March 1999 to August 1999, Swartz would regularly (i.e., approximately weekly) be in contact with Russo to inquire about the status of the contract documentation. Russo each time replied that Swartz had obtained the contract and that no one else qualified had submitted a bid and to "be patient" as the written documentation for the contract "was coming."

22. In reasonable reliance upon these representations of having been awarded this exclusive contract, Swartz purchased numerous items required for the performance of its obligations under the five-year contract including: a digital camera for the processing of the images of vehicles as required by the USMS; a wash trailer and pressure washer; a vehicle tow dolly; three digital telephones; a two-way radio; a portable air compressor; and numerous other items.

23. On or about September 1, 1999, Swartz unexpectedly received a letter from Russo stating that another contractor had been awarded a contract for auction services and vehicle maintenance services. According to that letter, the contract was to begin on October 1, 1999 and end September 30, 2000. The letter did not state the name of the new contractor or the reason why the new contractor was put in place contrary to the existing contract with Swartz. It did, however, emphasize twice that it was not due to dissatisfaction with the quality of Swartz's work for the USMS.

24. Upon receiving this letter, Swartz contacted Russo. Russo stated, inter alia, that (a) Katherine Marotta, a contracting officer for the USMS in New Jersey had made the decision to take away the contract from Swartz; and (b) that a company named BTI had been awarded another contract.

25. Further investigation by Swartz revealed that no auction company by the name of BTI existed in publicly available records of auctioneers and that the address for BTI was a vacant lot with a mailbox. Upon information and belief, however, BTI was owned by affiliates and/or relatives of Russo including but not limited to, his then girlfriend, Patricia Eisendorfer, and her brother, William Eisendorfer. In addition, it has been disclosed that other companies controlled and/or operated by the Eisendorfers were engaged by the USMS to provide services for the USMS with respect to seizure of real property, courier services for seized jewelry and vehicle towing.

26. On or about September 8, 1999, Swartz contacted Marotta to inquire as to its contract. Marotta stated that (a) the other contractor had not submitted a timely bid on the contract, the deadline for which was March 5, 1999 and (b) Russo had sent out a letter awarding the work to the other company without authorization to do so.

27. On or about September 9, 1999, Russo, as part of a scheme to conceal his activities in connection with the above, contacted Swartz and asked Swartz to tell Marotta, the contracting officer, that Swartz would be unable to do any auction or maintenance work for the next two months. Russo asked for this "favor," as he put it, because Russo had already sent out a letter to the other contractor authorizing it to commence work. Russo further threatened, during this telephone conversation, that if Swartz did not falsely inform Marotta of its inability to

perform auction and maintenance work, that Russo would no longer give Swartz any work including upcoming jewelry auctions to be performed by Swartz for which Swartz had already began preparing work.

28. After this telephone call from Russo, Swartz notified Marotta and Ivan Baptiste, a USMS supervisor in the District of New Jersey of the threats from Russo. Pamela Schindler an Asset Forfeiture Specialist and assistant of Russo at that time, was also informed of these threats. Neither responded in any meaningful way to these threats.

29. Baptiste was again notified of Russo's conduct in a letter from Swartz sent on or about September 27, 1999 and failed to address the conduct in any meaningful manner. Likewise, Peter Reese and Kimberely Weinland, located at the USMS headquarters in Washington, DC, likewise failed to make any meaningful response.

30. On or about October 14, 1999, the USMS gave Swartz two retroactive blanket purchase orders, to perform auction services and vehicle maintenance services for the period of October 1, 1998 to September 30, 2000. "Blanket Purchase Agreement," No. 00-50-NASAF-BPA-004 and auction services pursuant to BPA No. 00-50-NASAF-BPA-005. These agreements were thereafter extended to December 31, 2000.

31. Because of Russo's need to conceal his unlawful and fraudulent activities in connection with his unlawful efforts to cause an award of the maintenance and auction contract to BTI, Russo began to engage in a pattern and practice of harassment of Swartz.

32. Russo's scheme to unlawfully award contract(s) for auction and maintenance services to entities other than Swartz accelerated after Swartz reported Russo's misconduct. In

doing so, Russo's conduct made Swartz's performance of his obligations far more onerous than would have been under the contract. These activities further breached the covenant of good faith and fair dealing present in every contract. Among other things, Russo and his confederates engaged in the following activities:

(a) Russo falsely claimed that Swartz had sold a 1992 Lexus 400 at an auction on June 25, 1999 and had accepted a personal check for it. In truth, Russo had removed the vehicle from the June 25, 1999 auction list and sold the vehicle at half-price to his girlfriend outside the USMS auction system. Russo's knowingly false statement was made to third parties with the intent to bring disrepute upon Swartz;

(b) In the summer of 1999, a certain 1997 Toyota being held for auction suddenly lurched into reverse and was damaged. Realizing that the resulting damage was the cause of a vehicle malfunction, not Swartz's negligence, Russo stated that the damage would not be charged to Swartz. However, by letter of September 23, 1999, Russo reconsidered and ordered Swartz to pay for the damage;

(c) On or about October 29, 1999, Russo sent an email to other USMS offices falsely claiming that: (1) Swartz would have bidders in the audience bid up the price of a car; and (2) buy cars through third parties. Expressing a desire to "get rid of Brian Swartz," he urged the other USMS offices to cooperate with his efforts.

(d) In a further effort to operate the auctions of forfeited vehicles as his own private enterprise, Russo unlawfully directed Swartz to accept personal checks from relatives and/or friends of Russo for the purchase vehicles and jewelry;

(e) Russo engaged in several instances of stalking Swartz from and after September 1999;

(f) Russo changed policies concerning the acceptance of bids by telephone, thereby resulting in the car sale prices being depressed and a reduction in commission payable to Swartz;

(g) Linda Rudolph of the USMS for the Eastern District of New York would send her agents and employees to the vehicle storage site to verify maintenance work on the vehicles. In the course of such verifications, Rudolph's staff would repeatedly take, misplace, or lose the car keys for the vehicles in question and then falsely blame Swartz for the loss of the keys;

(h) Despite repeated notices from Swartz about mouse and rat infestation at the vehicle storage and auction site the USMS consistently failed to take steps to address it. The mouse and rat infestation created an unsafe working environment for Swartz. Moreover, the rodents chewing on wires caused damage to vehicles wiring thereby depressing the sales prices of the vehicles and/or resulted in false accusations by the USMS against Swartz that it had allowed the vehicles to fall into disrepair, coupled with demands that it repair them at its own cost and expense;

(i) The USMS, despite repeated notices form Swartz, failed to control hornet infestation, which, as with the rodents, created an unsafe working environment for Swartz.

(j) Advertising performed by the USMS for the Swartz's auctions and bearing Swartz's name was not executed in a workmanlike manner, specifically, numerous such advertisements contained errors included but not limited to auction time, vehicle information and/or terms of sale. Such errors generated bad will among Swartz's customers;

(k) Deputy U.S. Marshals and/or agents of the Federal Bureau of Investigation engaged in the unauthorized use and/or theft of Swartz's tools;

(l) Swartz was falsely accused of the theft of certain vehicle parts;

(m) Swartz was unjustifiably reprimanded for failing to sign for an inventory of a shipment of electrical equipment when the equipment had been effectively dumped on the warehouse floor without adequate controls to maintain a proper chain of custody of the equipment.

33. Moreover, during this period, Russo and/or his affiliates in the USMS for the Eastern District of New York engaged in breaches of the blanket purchase agreements as well as the express and implied contract between Swartz and USMS by, inter alia, removing vehicles from auctions which Swartz was entitled to sell (and thereby earn a commission upon); removing jewelry from auction which Swartz was entitled to sell (and thereby earn commission upon); and by failing to pay the full amount of invoices properly submitted by Swartz to the USMS.

34. In further retaliation against Swartz, Russo, in and after September 1999, withdrew jewelry sales that, pursuant to express and implied agreements between Swartz and the USMS, would be sold by Swartz, thereby depriving Swartz of the ability to earn commissions on such sales.

35. On or about December 5, 2000, Swartz received a request for bids from the USMS for a one-year auction contract, No. 01-50-NASAF-006.

36. Swartz submitted a bid on this contract but the contract was awarded to another entity.

**DAMAGES**

37. By virtue of the conduct described above, Swartz has suffered damages. These include, but are not limited to the following:

(a) Loss of profits as a result of not being awarded the five-year contract no. NS-98-R-0019 for vehicle auctions, estimated at no less than $91,938.00 per annum (hereinafter the "1998 Contract")

(b) Loss of profits by virtue of not being awarded the one-year vehicle auction contract in December 2000.

(c) Expenses incurred for bid preparation and expenses incurred in purchasing equipment in preparation for performance of the contracts.

(d) Loss of commissions from various breaches of the BPAs, the wrongful removal from auction and/or sale by Swartz items assigned to Swartz for auction and/or sale including, but not limited to, vehicles, real property jewelry and other merchandise and bad-faith conduct by the USMS in the course of its relationship with Swartz.

**COUNT ONE (Breach of 1998 contract-vehicle auctions)**

38. Plaintiff repeats and realleges the allegations in Paragraphs 1- 37 above as if same were fully set forth herein at length.

39. By virtue of the statements and actions of Russo and other agents and officers of

the USMS, Swartz's bid on the Contract the bid for which was initially submitted in June 1998 (the "1998 Contract") was validly accepted by the USMS and therefore, an express and/or implied contract is in effect for Swartz to exclusively render vehicle auction services for five years to the USMS, District of New Jersey, Southern District of New York, and Eastern District of New York.

40. The failure of the USMS to supply Swartz with vehicles to sell pursuant to the 1998 Contract is a material breach of that contract and has resulted in damages to Swartz.

**COUNT TWO (Failure to award 1998 contract-vehicle auctions)**

41. Plaintiff repeats and realleges the allegations in Paragraphs 1- 40 above as if same were fully set forth herein at length.

42. In the alternative to the allegations of Count One, if the 1998 Contract is found to have not been awarded to Swartz, then the denial of such award was arbitrary and capricious in that: (a) Swartz was a responsible bidder; (b) Swartz was the sole bidder to timely submit a bid for that contract and (c) Swartz offered the best prices and experience of any bidders for that contract, whether such other bids were timely submitted or not.

**COUNT THREE (Breach of vehicle maintenance service contracts)**

43. Plaintiff repeats and realleges the allegations in Paragraphs 1- 42 above as if same were fully set forth herein at length.

44. Swartz and the USMS had valid contracts, pursuant to the various Blanket Purchase Agreements, under which Swartz would exclusively perform vehicle maintenance services.

45. The USMS materially breached those contracts by among other things: (a) withdrawing vehicles from services and (b) failing to pay invoices duly submitted according to those contracts, thereby resulting in damages to Swartz.

**COUNT FOUR (Failure to award 2000 contract-vehicle auction services)**

46. Plaintiff repeats and realleges the allegations in Paragraphs 1- 45 above as if same were fully set forth herein at length.

47. Defendant acted arbitrarily and capriciously in refusing to award the 2000 Contract to Swartz in that (a) Swartz was a responsible bidder; (b) upon information and belief, Swartz was the sole bidder to timely submit a bid for that contract; and (c) Swartz offered the best prices and experience of any bidders for that contract, whether such other bids were timely submitted or not.

**COUNT FIVE (Breach of jewelry auction services agreements)**

48. Plaintiff repeats and realleges the allegations in Paragraphs 1- 47 above as if same were fully set forth herein at length.

49. By virtue of the statements and actions of Russo and other agents and officers of the USMS, an express and/or implied contract is in effect for Swartz to render jewelry auction

services for five years to the USMS, District of New Jersey, Southern District of New York, and Eastern District of New York.

50. The USMS' failure to supply Swartz with jewelry to sell pursuant to the contracts between them is a material breach of that contract and has resulted in damages to Swartz.

**COUNT SIX (Breach of Contract)**

51. Plaintiff repeats and realleges the allegations in Paragraphs 1-50 above as if same were fully set forth herein at length.

52. During the course of its relationship with Swartz, the USMS assigned Swartz various items for auction and/or sale by Swartz including, but not limited to, vehicles, real property jewelry and other merchandise.

53. Contrary to and in breach of its obligations, the USMS wrongfully removed these items from auction and/or sale by Swartz.

54. As a result, Swartz has suffered damages in excess of $445,000.00.

**COUNT SEVEN (Breach of Implied Contract to treat bids honestly and fairly, etc.)**

55. Plaintiff repeats and realleges the allegations in Paragraphs 1-54 above as if same were fully set forth herein at length.

56. In soliciting and considering bids by Swartz, the USMS had a duty to treat bids honestly and fairly, not act in an arbitrary and capricious manner and to otherwise act reasonably.

57. In dealing with Swartz and considering bids by Swartz, the USMS breached its aforementioned obligations to Swartz.

58. As a result, Swartz has suffered damages including, but not limited to, bid preparation costs, bid protest costs and costs associated with preparing for performance of the contracts that were the subject of the bids.

**COUNT EIGHT (Breach of covenant of good faith and fair dealing)**

59. Plaintiff repeats and realleges the allegations in Paragraphs 1-58 above as if same were fully set forth herein at length.

60. The conduct of USMS, its agents, officers and employees, as aforesaid, is in breach of the covenant of good faith and fair dealing present in every contract, and such breaches proximately caused damage to Swartz.

WHEREFORE, Plaintiff demands judgment in its favor and against the United States of America:

(a) Awarding damages to Swartz for breach of express and/or implied contract and/or for breach of the implied covenant of good faith and fair dealing;

(b) Declaring and adjudging that the 1998 Contract was properly awarded to Swartz;

(c) Declaring and adjudging that the USMS breached its implied-in-fact contract to treat bids honestly and fairly and acted in an arbitrary and capricious manner in connection with Swartz bid on the 1998 and 2000 Contracts.

(d) Awarding Swartz attorney's fees and costs of suit; and

(e) Awarding Swartz such other legal and equitable relief as the Court deems just and proper.

Respectfully submitted,

SODINI & SPINA, LLC
Attorneys for Plaintiff,
Swartz Associates, Inc.

By: ______________________________
GREGG S. SODINI

Dated: October 30, 2003