**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SWARTZ ASSOCIATES, INC.,** | : | **Docket No. 01-316-C** |
| **Plaintiff,** | : | |
| **v.** | : | |
| **THE UNITED STATES OF AMERICA,** | : | |
| **Defendant.** | : | |

**BRIEF OF PLAINTIFF SWARTZ ASSOCIATES, INC. IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**SODINI & SPINA, LLC**
**510 Thornall Street, Suite 180**
**Edison, NJ 08837**
**(732) 603-8808**
**Attorneys for Plaintiff Swartz Associates, Inc.**

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ....................................................................................1

A. NATURE OF PLAINTIFF'S CLAIM ....................................................1

B. PROCEDURAL HISTORY ....................................................................5

C. THE GOVERNMENT'S MOTION ......................................................6

LEGAL ARGUMENT ......................................................................................8

A. THE COURT SHOULD EXERCISE IT'S DISCRETION AND STAY THIS SUIT PENDING A DECISION BY THE CONTRACTING OFFICER AS TO THE CLAIMS AT ISSUE ........................................8

B. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE DOCTRINE OF LACHES ....................................................................................9

CONCLUSION ..................................................................................................11

# TABLE OF AUTHORITIES

**Page**

**Cases**

Briggs Engineering and Testing Co., Inc. v. United States, 230 Ct. Cl. 828 (1982) ............8

Gasser Chair Co. Inc., v. Infanti Chair Mfg. Corp., 60 F.3d 770, 773 (Fed. Cir. 1995 .........9

LaCoste v. United States, 9 Cl. Ct. 313 (1986).........................................................10

Wanlass v. Gen. Elec. Co., 148 F.3d 1334 (Fed. Cir. 1998)................................................9

**Statutes**

41 U.S.C. §601 et seq..........................................................................................6

41 U.S.C. §601(c)(1) ..........................................................................................8

41 U.S.C. §605.....................................................................................................6, 8

**Regulations**

FAR §33.206........................................................................................................8

FAR §33.207........................................................................................................8

## STATEMENT OF FACTS

### A. NATURE OF PLAINTIFF'S CLAIM

Plaintiff, Swartz Associates, Inc. ("Swartz") had rendered auction services and vehicle maintenance services for the U.S. Marshal's Services ("USMS") since 1992. See Amended Complaint ("Complaint") filed November 13, 2003, Paragraphs 5-6. Between 1992 and 1996, Swartz provided auction services to USMS for the District of New Jersey by auctioning various goods including, but not limited to, hair bows and stereo equipment, on behalf of the USMS. See Complaint, Paragraph 7. Swartz's services to the USMS for the District of New Jersey expanded over time to include additional auctions plus the performance of maintenance on vehicles. In addition, the USMS in the Eastern District of New York, the Southern District of New York, and Eastern District of Pennsylvania, recognizing Swartz's superior service, retained Swartz to conduct auction services and maintenance services. See Complaint, Paragraph 8.

From 1996 to 1998, Swartz conducted its maintenance and auction services for the USMS offices of the District of New Jersey, the Eastern District of New York and the Southern District of New York under various "Blanket Purchase Agreements." See Complaint, Paragraph 10. The practice of the USMS, at all times relevant hereto, was that the main contact between Swartz and the USMS was Deputy U.S. Marshal Dominick R. Russo ("Russo") from the New Jersey office. In this regard, Russo represented himself to Swartz as the designated contracting officer for the Government. See Complaint, Paragraph 11.

In March 1998, Russo invited Swartz to bid for a five-year contract for auction services and maintenance services, number NS-98-R-0019. See Complaint, Paragraph 12. On or about June 4, 1998, Swartz timely sent a package to the USMS headquarters, submitting its bid on the

five-year contract. Shortly thereafter, the USMS headquarters requested additional information which Swartz timely provided. See Complaint, Paragraph 13.

On repeated occasions after June 4, 1998, Russo repeatedly told Swartz that it was the sole bidder on the five-year auction and maintenance contract and that, as a result it had been awarded the five-year exclusive contract and that the final paperwork would be forthcoming. See Complaint, Paragraph 14. On or about November 2, 1998, Swartz received a "scope of work" statement to submit prices while waiting to begin work under the terms of the new contract. See Complaint, Paragraph 15. In November 1998, Russo told Swartz to begin work on December 1, 1998 under the terms of the five-year contract and that the final paperwork would be forthcoming. See Complaint, Paragraph 16. Thereafter, on November 4, 1998, in response to a telephonic inquiry from Russo, Swartz submitted to Russo the pricing for vehicle maintenance, inspection, auction preparation, and auction services. See Complaint, Paragraph 16.

On December 2, 1998, Swartz received from Russo an "Order for Supplies or Services," Order number 99-50-NASAF-010; Requisition Reference Number 99-050-183. This Order for Supplies or Services asked Swartz to provide monthly maintenance, check-in processing and Auction preparation services. See Complaint, Paragraph 17.

In late December 1998, Russo asked Swartz to change its fee structure and instead of charging separately for advertising and security expenses, to increase its auction commission percentage to compensate it for these expenses. Swartz complied with this request. See Complaint, Paragraph 18.

On or about February 3, 1999, Russo again confirmed that Swartz had been awarded the five-year contract but said that the final contract from New Jersey has to be written as a "base year plus four option years." See Complaint, Paragraph 19.

On or about February 19, 1999, Russo sent out a solicitation for interested bidders to provide "maintenance and auction services for seized and forfeited vehicles." The deadline for responding to this solicitation was March 5, 1999. On or about March 3, 1999 Swartz submitted a bid in response to this solicitation to continue providing these services "for another five years and well into the future." No entity other than Swartz timely submitted a bid in response to this solicitation. See Complaint, Paragraphs 21-23.

From March 1999 to August 1999, Swartz would regularly (i.e., approximately weekly) be in contact with Russo to inquire about the status of the contract documentation. Russo each time replied that Swartz had obtained the contract and that no one else qualified had submitted a bid and to "be patient" as the written documentation for the contract "was coming." See Complaint, Paragraph 25. In reasonable reliance upon these representations of having been awarded this exclusive contract, Swartz purchased numerous items required for the performance of its obligations under the five-year contract including: a digital camera for the processing of the images of vehicles as required by the USMS; a wash trailer and pressure washer; a vehicle tow dolly; three digital telephones; a two-way radio; a portable air compressor; and numerous other items. See Complaint, Paragraphs 26-27.

On or about September 1, 1999, Swartz unexpectedly received a letter from Russo stating that another contractor had been awarded a contract for auction services and vehicle maintenance services. According to that letter, the contract was to begin on October 1, 1999 and end September 30, 2000. The letter did not state the name of the new contractor or the reason why the new contractor was put in place contrary to the existing contract with Swartz. It did, however, emphasize twice that it was not due to dissatisfaction with the quality of Swartz's work for the USMS. Upon receiving this letter, Swartz contacted Russo. Russo stated, *inter alia*, that

(a) Katherine Marotta, a contracting officer for the USMS in New Jersey had made the decision to take away the contract from Swartz and (b) that a company named BTI had been awarded another contract. Further investigation by Swartz revealed that no auction company by the name of BTI existed in publicly available records of auctioneers and that the address for BTI was a vacant lot with a mailbox. Upon information and belief, however, BTI was owned by affiliates and/or relatives of Russo including but not limited to, his then girlfriend, Patricia Eichelsdoerfer, and her brother, William Eichelsdoerfer. In addition, it has been disclosed that other companies controlled and/or operated by the Eichelsdoerfers were engaged by the USMS to provide services for the USMS with respect to seizure of real property, courier services for seized jewelry and vehicle towing. See Complaint, Paragraphs 28-32.

On or about September 8, 1999, Swartz contacted Marotta to inquire as to its contract. Marotta stated that (a) the other contractor had not submitted a timely bid on the contract, the deadline for which was March 5, 1999 and (b) Russo had sent out a letter awarding the work to the other company without authorization to do so. On or about September 9, 1999, Russo, as part of a scheme to conceal his activities in connection with the above, contacted Swartz and asked Swartz to tell Marotta, the contracting officer, that Swartz would be unable to do any auction or maintenance work for the next two months. Russo asked for this "favor," as he put it, because Russo had already sent out a letter to the other contractor authorizing it to commence work. Russo further threatened, during this telephone conversation, that if Swartz did not falsely inform Marotta of its inability to perform auction and maintenance work, that Russo would no longer give Swartz any work including upcoming jewelry auctions to be performed by Swartz for which Swartz had already begun preparing work. See Complaint, Paragraphs 33-34.

On or about October 14, 1999, the USMS gave Swartz two retroactive blanket purchase orders, to perform auction services and vehicle maintenance services for the period of October 1, 1998 to September 30, 2000. "Blanket Purchase Agreement," No. 00-50-NASAF-BPA-004 and auction services pursuant to BPA No. 00-50-NASAF-BPA-005. These agreements were thereafter extended to December 31, 2000. See Complaint, Paragraphs 33-35.

Swartz' objection to Russo's conduct resulted in retaliatory activities by Russo that included, among other things, stalking, harassment and defamation of Swartz and its principals. Moreover, during this period, Russo and/or his affiliates in the USMS for the Eastern District of New York engaged in breaches of the blanket purchase agreements as well as the express and implied contract between Swartz and USMS by, *inter alia*, removing vehicles from auctions which Swartz was entitled to sell (and thereby earn a commission upon); removing jewelry from auction which Swartz was entitled to sell (and thereby earn commission upon); and by failing to pay the full amount of invoices properly submitted by Swartz to the USMS. See Complaint, Paragraphs 33-34.

**B. PROCEDURAL HISTORY**

On May 24, 2001, Swartz commenced the within action in the Court of Federal Claims to redress the breaches of express and implied contract, breaches of the implied covenant of good faith and fair dealing, and alternatively, wrongful contract denials by the USMS. (Complaint, Paragraphs 38-52). Thereafter, on August 14, 2001 and prior to filing of any Answer by the Government, the Government moved to stay the action pending the resolution of "a criminal investigation into, among other things, the matters raised in the Complaint" insofar as the "criminal investigation involving the same facts is underway, in order to obviate improper

interference from this matter with the criminal proceedings." The matter was stayed by this Court's Order dated October 12, 2001 and remained stayed until October 2003.

In the interim, the Government filed criminal charges against Mr. Russo including, but not limited to conspiracy to defraud the United States, mail fraud, conversion and unauthorized sales and corruptly persuading a witness to provide misleading information in violation of various statutes and common law. Thereafter, Mr. Russo was found guilty following a jury trial. One of the principals of Swartz testified at trial for the Government.

**C. THE GOVERNMENT'S MOTION**

In its motion, the Government seeks to (1) dismiss the breach of contract counts of the Complaint (Counts One, Three, Five, Six and Eight), (2) dismiss Count Two on grounds of "laches"[1] and (3) dismiss any lost profit claims asserted in Counts Two, Four and Seven. With respect to the breach of contract claims, the Government asserts that Swartz has not complied with the jurisdictional prerequisites set forth in the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §601 et seq., (ostensibly because no breach of contract claim was submitted to the contracting officer within the meaning of the CDA) such that the Court lacks jurisdiction to entertain such claims. In Point V of its brief, the Government seeks to dismiss "Swartz's Bid Protest Claim with respect to Swartz's 1998 Bid To Obtain The Five-Year Contract Because It Is Barred By The Doctrine Of Laches." Finally, in Point VI, the Government seeks dismissal of all claims of Swartz seeking monetary relief beyond bid preparation and proposal costs.

With respect to the breach of contract claims, Swartz has recently submitted each of the claims at issue to Ibis Salas, the contracting officer for the appropriate region of the USMS and,

[1] The Government's argument on this point is contained in Point V of its brief. In this regard, while the entire argument appears to be focused on Count Two of the Complaint, the closing paragraph asks the Court to "dismiss count one." We assume this is a clerical error. However, to the extent it is not, any laches argument as to dismissal of count one is addressed below.

pursuant to statute, a decision must be rendered within 60 days. 41 U.S.C. §605(c). See January 29, 2004 Certification of Gregg S. Sodini submitted herewith. Accordingly, Swartz submits that the more appropriate relief would be to stay this action until a decision as to the claims of Swartz is made or the passage of sixty days, whichever comes first. However, if the Court is inclined to dismiss, it should be made clear that any dismissal is without prejudice and expressly allows Swartz to re-file after the disposition of its claims under the CDA. As to the laches argument, it simply is without serious merit and should be rejected. Finally, as to the limitation sought on the monetary relief sought in Counts Two, Four and Seven, Swartz agrees that its damages under these counts are limited to "bid preparation and proposal costs" under 28 U.S.C. §1491(b)(2). However, any order to this effect should be without prejudice to whatever rights Swartz may have to seek recovery of such damages in connection with its breach of contract claims.

## LEGAL ARGUMENT

### A. THE COURT SHOULD EXERCISE ITS DISCRETION AND STAY THIS SUIT PENDING A DECISION BY THE CONTRACTING OFFICER AS TO THE CLAIMS AT ISSUE

The Government seeks to dismiss Counts One, Three, Five, Six and Eight of the Complaint (sounding in breach of contract) on grounds that Swartz failed to submit a written certified demand regarding same to the contracting officer pursuant to 41 U.S.C. §605. That Section provides in pertinent part, that:

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for decision.

41 U.S.C. §605.

Moreover, the CDA requires that:

> For claims of more than $100,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects that contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.

41 U.S.C. §601(c)(1), Federal Acquisition Regulations (FAR) §§33.206 and 33.207.

Lastly, the CDA provides that:

> . . . in the event an appeal or suit is so commenced in the absence of a prior decision by the contracting officer, the tribunal concerned may, at its option, stay the proceedings to obtain a decision by the contracting officer.

41 U.S.C. §605(c)(5). See also, Briggs Engineering and Testing Co., Inc., 1982 WL 36677 (Ct. Cl. 1982) (Court may properly stay an action pursuant to 41 U.S.C. §605(c)(5) where claim is pending before contracting officer and no decision has yet been rendered).

As set forth above, Swartz respectfully submits that, in the interests of fairness and efficiency, the Court should exercise its discretion to stay rather than dismiss the claims set forth in Counts One, Three, Five, Six and Eight of the Complaint. The subject matter of Plaintiff's claims is well known to the Government and formed the basis of a criminal complaint against Russo ultimately resulting in a guilty verdict following a jury trial. During the course of the criminal investigation and subsequent trial, this matter was stayed at the Government's request for approximately two years. During this time period, it is not even clear that the Government would have considered any claims by Swartz under the CDA and probably would have sought to delay consideration of any such claims for the same reasons it sought a stay of these proceedings. Accordingly, it is not appropriate to assert that this matter should not be stayed for an additional 60 days so as to allow the contracting officer to render a decision as to the claims recently submitted by Swartz under the CDA. In fact, it is difficult to conceive of a situation where a stay

is more appropriate. Nonetheless, to the extent the Court does not believe it has the authority to order a stay on this basis, any Order should clearly provide that (1) any dismissal is without prejudice and (2) expressly allows Swartz to re-file after the disposition of its claims under the CDA

**B. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE DOCTRINE OF LACHES**

The Government claims that Count Two -- the Government not awarding the 998 Contract must be dismissed as barred by the doctrine of laches. In support of its argument, the Government distorts the underlying facts and applicable law.

The Government concedes that, in order to establish laches, the government must establish that "the plaintiff delayed filing suit an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and . . . the delay resulted in material prejudice or injury to the defendant." Wanlass v. Gen. Elec. Co., 148 F.3d 1334 (Fed. Cir. 1998) (Citing Gasser Chair Co. Inc., v. Infanti Chair Mfg. Corp., 60 F.3d 770, 773 (Fed. Cir. 1995)) Neither prong is satisfied here.

First, the Government claims that Swartz "knew that its bid for a 5 year contract had been rejected either in February 1999 (when it was invited to bid upon a contract to provide similar services on a base year plus four year option basis) or in September 1999 (when it was again notified that it had not been awarded the revised base plus four year option contract). See Government's Brief at page 14. From this, the Government concludes that Swartz's failure to file its Complaint until May 2001 was "unreasonable" and "inexcusable" and asks this Court to follow suit. However, the Government conveniently ignores the fact that Katherine Marotta of the USMS subsequently informed Swartz that no other contractor had submitted a timely bid on the contract and that Russo had sent the letter awarding the work to his affiliates without

authorization. See Complaint, Paragraph 26. Thereafter, Russo repeatedly advised Swartz that the contract documentation would be forthcoming. See Complaint, Paragraph 33. Moreover, even if Swartz had knowledge of the breach of the 1998 contract as of September 1999 as the Government claims, it cannot be said that Swartz's failure to file suit until May 2001 is "unreasonable" or "inexcusable." Indeed, the case the Government cites for that proposition is clearly inapposite. Unlike LaCoste v. United States, 9 Cl. Ct. 313 (1986) -- the sole case cited by the Government involving a claim under the CDA -- it cannot be said that Plaintiff failed to file suit until more than six years after the cause of action accrued or otherwise deliberately sought to extend the statute of limitations by unilaterally delaying the administrative process. In addition, the Government offers nothing in support of the proposition that any alleged delay in the filing of this suit has resulted in any prejudice to it. The Government does not claim to have destroyed documents pursuant to document destruction policies or that witnesses are otherwise unavailable. Indeed, insofar as the criminal prosecution of Russo involved the facts at issue here, it is clear that the relevant records were preserved and adequate witnesses are available to permit the Government to meet the substance of Plaintiff's claim.[2]

Finally, to the extent the Government is arguing that Count One of the Complaint should be dismissed on grounds of laches and it is not merely a clerical error, the above arguments apply with even greater force. In fact, because 41 U.S.C. §605(a) allows a claimant such as Swartz six years after the accrual of its claims to submit same under the CDA, any laches argument should be summarily rejected. Simply put, the Government should not be permitted to in effect shorten

[2] To the extent the Government asserts that any subsequent delay and resulting prejudice, if any, should be considered, it bears emphasis that it was as a result of the Government's efforts that this case was stayed while the criminal case against Russo went forward. In short, any claimed delay and/or prejudice from that cannot be visited upon Swartz.

the statute of limitations using laches. Accordingly, the Government's claims for dismissal under the doctrine of laches must be denied.

**CONCLUSION**

Based upon the foregoing, the Government's Motion to Dismiss Counts One, Three, Five, Six and Eight for lack of subject matter jurisdiction should be denied and the action stayed. Similarly, the Government's Motion to Dismiss based upon laches must similarly be denied.

Respectfully submitted,

SODINI & SPINA, LLC
Attorneys for Plaintiff Swartz Associates, Inc.

By: /s/ Gregg S. Sodini
GREGG S. SODINI

Dated: January 29, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of January, 2004, I caused to be placed in the United States Mail ( first class, postage prepaid) and to be served via facsimile, a copy of (1) the Brief Of Plaintiff Swartz Associates, Inc. In Opposition To Defendant's Motion To Dismiss and (2) the January 29, 2003 Certification of Gregg S. Sodini to counsel for Defendant at the following address:

John H. Roberson, Esq., Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 353-7972
Facsimile: (202) 514-8640
Attorneys for Defendant

I further hereby certify that on this 29th day of January, 2004, copies of the foregoing documents were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Gregg S. Sodini
GREGG S. SODINI